IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAROLD B. CORNISH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0969-K |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| PROTECTIVE AND REGULATORY | § | |
| SERVICES, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion for Summary Judgment, filed June 15, 2006, Defendants' Opposed Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment, filed August 30, 2005, and Plaintiff's Motion for Leave to File Response to Defendants' Motion for Summary Judgment Out of Time, filed September 26, 2005. After review and consideration of the motion, response, reply, summary judgment evidence, pleadings on file in this case, and the applicable law, the court has determined that Cornish has not set forth sufficient evidence raising a genuine issue of material fact on his claims of gender discrimination or retaliation. Therefore,  Defendants' Motion for Summary Judgment is **granted.**  Plaintiff's Motion for Leave to File Response  to Defendants'  Motion for Summary Judgment Out of Time is also **granted**, and Defendants' Opposed Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment is **denied as moot.**

1

## I.    Factual and Procedural Background

Plaintiff Harold B. Cornish ("Cornish") is a 43 year old African-American male. His educational background includes a high school diploma, an associates' degree in Police Science, and a Bachelor of Arts degree with a major in Criminal Justice and a minor in Social Services.  Cornish has spent the majority of his career working as a police officer for the Dallas Police Department ("DPD").  During part of his tenure with the DPD, Cornish taught classes at the Dallas Police Academy in subjects including investigation report writing, investigating cases of sexual assault, child and adult abuse and neglect, and family violence.  He also conducted practical field training in those subjects.

The DPD terminated Cornish's employment in March 1999.  Although he sought reinstatement to his position at the DPD, this effort failed, and Cornish filed an EEOC charge of discrimination against the DPD.  After receiving his right to sue letter from the EEOC, he sued the DPD for racial discrimination and retaliation.  That case is currently pending.

Individual Defendant John Adamo ("Adamo") is the Director of Administrative Legal Services for the Department of Family and Protective Services.  Prior to November 2004, Adamo held the position of Counsel for Employee Relations for the Department of Family and Protective Services.  Until September 1, 2004, and during the time period relevant to this lawsuit, the Department of Family and Protective Services was known as the Texas Department of Protective and Regulatory Services

2

("TDPRS").  Individual Defendant Stuart Mackie ("Mackie") was a Human Resources Specialist for TDPRS until September 2003, when he retired from the agency.

Defendant TDPRS is a state agency primarily responsible for the regulation and monitoring of commercial and residential childcare providers.  TDPRS has over 6,000 employees, and frequently uses general job announcements for the many entry-level vacancies it has to fill on an ongoing basis.  Multiple candidates who apply for a single general announcement job posting may be selected.  However, candidates who apply for one general announcement job posting will not be considered for other general announcement job postings.

TDPRS personnel determines the minimum qualifications for jobs in the agency.  An entry-level child protective services specialist (Child Protective Specialist II) must have graduated from an accredited four-year college or university.  More experienced positions (Child Protective Specialist III-IV) require previous employment as a Child Protective Specialist and certification through the TDPRS's certification program.  Entry-level and experienced adult protective services positions have the same minimum qualifications, requiring a degree from an accredited four-year college or university.   TDPRS gives preference for hiring in these entry-level positions to candidates who have a four-year degree in social work, who have formal experience in

social work, who have previous employment experience with TDPRS, or who speak Spanish.

3

Candidates for other positions with TDPRS must meet additional requirements. Applicants for a Case Analyst II position must have a four-year degree plus one year of full time social services experience. Applicants for director and supervisor positions must also have considerable experience in social work. In addition to the above hiring preferences applied by TDPRS, TDPRS has contractual obligations to employ "stipend students." Sarah Calloway, one of the comparators cited by Cornish, was hired by TDPRS as part of a contractual obligation.

When TDPRS has multiple recurring job openings for a single type of job, such as an entry-level Child Protective Services Specialist, Mackie would interview applicants for any open position, rather than a single vacant position. After the interview, the applicant would be scored and placed on a list according to their scores and any applicable hiring preferences. When a vacancy arose, Mackie selected the top available candidate from the list for a hiring recommendation. During the relevant time period, an applicant's interview score was effective for six months following the interview. After the expiration of six months from the date of the interview, the candidate would have to re-apply and receive another interview to be eligible for open positions with TDPRS.

Cornish began applying for jobs with TDPRS in March 2002. Between March and October 2002, Cornish applied for 41 jobs with TDPRS. In late April or early May 2002, Mackie's office arranged for Cornish to interview for several open entry-level positions. That interview did not take place as scheduled, and was eventually

4

rescheduled for July 11, 2002.  On July 10, 2002, Cornish learned of a death in his family, and requested that the interview be rescheduled because he needed to attend the funeral.  Mackie's office rescheduled the interview for July 17, 2002.

On July 17, 2002, Mackie interviewed Cornish for recurring open entry-level Child Protective Specialist positions in the Dallas-Fort Worth area.  According to Cornish, Mackie told him during the interview that he was better qualified than most applicants, who were young and fresh out of college.  It is undisputed that Mackie was aware of Cornish's EEOC charge against the DPD no later than the date of his interview with Mackie.  During the interview, Cornish and Mackie discussed Cornish's experience, Cornish did a practical problem solving exercise, and they discussed whether Cornish was willing to travel.

Mackie graded Cornish on his performance, giving him a score of 6.5.  Cornish's score was below the average score for applicants who are given recommendations for hire.  Cornish did not receive a preference for hiring because he did not have a degree in social work, did not have any formal social work experience, did not have experience with TDPRS, and did not speak Spanish.  Taking his interview score and lack of hiring preference into account, Mackie placed Cornish on a list of candidates who were eligible for hire by TDPRS.  Mackie did not recommend Cornish for hire because his interview score was lower than the average score for candidates who were recommended, and he did not meet the criteria for a hiring preference.  Although he continued to apply for jobs with TDPRS following his interview, and had about six to

eight interviews with other individuals at TDPRS in 2003, Cornish was never hired by TDPRS.

On January 24, 2003, Cornish filed a complaint of discrimination with TDPRS. Under TDPRS policy, applicants may file discrimination complaints with the agency within 20 business days of the alleged discrimination.  Cornish's complaint did not allege an act of discrimination within the previous 20 business days, so TDPRS treated the complaint as untimely and dismissed it.  After filing a charge of discrimination with the EEOC and obtaining a right to sue letter, Cornish brought this case against TDPRS, Adamo and Mackie, alleging claims of age discrimination in violation of the Age Discrimination in Employment act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  TDPRS, Adamo and Mackie now move for summary judgment on all of Cornish's claims.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54.  Once a movant makes a properly supported motion, the burden shifts to the

nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III.    Defendants' Motion for Summary Judgment

TDPRS, Adamo and Mackie contend that there is no genuine issue of material fact presented by the summary judgment record whether Cornish was not hired by TDPRS because of his age or gender, or whether Defendants retaliated against him.

### A.    ADEA Claim and Claims Against Adamo and Mackie

In his response to Defendants' Motion for Summary Judgment, Cornish concedes that his ADEA claim and his Title VII claims against Adamo and Mackie are not viable, and states that the only remaining claims he wishes to pursue are his Title VII discrimination and retaliation claims against TDPRS. Therefore, Cornish's age discrimination claims under the ADEA and his Title VII claims against Adamo and Mackie are **dismissed with prejudice.**

### B.    Title VII Claims Against TDPRS

Cornish asserts two Title VII claims against TDPRS. First, Cornish alleges that TDPRS discriminated against him on account of his gender by not hiring him.

7

Second, Cornish alleges that TDPRS retaliated against him for filing a charge of discrimination against the DPD and internal discrimination complaints with TDPRS.

## 1.    Gender Discrimination - Disparate Treatment

Under Title VII, an employer cannot "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1). Thus, the Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff based upon one of the factors prohibited by Title VII.  *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003), *citing United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983).

Resolution of a Title VII claim depends upon a three-step burden-shifting analysis.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 793 (1973); *Johnson,* 351 F.3d at 621. First, a plaintiff must raise a genuine issue of material fact on each element of his *prima facie* case.  *Johnson,* 351 F.3d at 621; *Lindsey v. Prive Corp.,* 987 F.2d 324, 326 (5th Cir. 1993).  If the plaintiff successfully articulates a *prima facie* case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment decision. *Id.*  Finally, the plaintiff must raise a genuine issue of material fact whether the defendant's nondiscriminatory reason is a pretext for discrimination.  *Id.*

### a.    Cornish's *Prima Facie* Case

To establish his *prima facie* case of gender discrimination, Cornish must show

8

that 1) he is a member of a protected group; 2) he applied for a position with TDPRS; 3) he was qualified for the position when he applied; 4) he was not selected for the position; and 5) the position remained open or TDPRS selected a female candidate to fill it. *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir. 1994). TDPRS argues on summary judgment that Cornish has failed to establish a *prima facie* case of gender discrimination.

### i. Postings #C-03-02-386 and #C-03-02-387

TDPRS contends that Cornish cannot establish a *prima facie* case of discrimination regarding these two Child Protective Specialist openings because he did not submit timely applications for them. TDPRS has provided competent summary judgment proof showing that candidates who apply for one general job announcement posting will not be considered for other general job announcement postings, and that applicants who do not follow the formal applications procedure for the job posting will not be hired.

Cornish disputes this contention, relying on conclusory allegations in his pleading and his affidavit that he did apply for these jobs, but does not show that he followed TDPRS's application process for these particular job announcements. Cornish further relies on an unsupported statement in his brief that TDPRS "should have" been considered for those openings. Unsupported allegations or affidavits setting forth ultimate or conclusory facts are insufficient to avoid the entry of summary judgment. *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985); *see*

9

*also Garcia v. LumaCorp., Inc.,* 429 F.3d 549, 555 (5th Cir. 2005)(unsubstantiated assertions in affidavits are not competent summary judgment evidence).

The court further notes that although both of these positions were eventually filled by female applicants, those applicants were not similarly situated to Cornish because he was not considered for either of these positions. TDPRS has shown that there is no genuine issue of material fact whether he applied for these positions. Because he did not apply, Phillips and Gomez were not hired in his place, and are not appropriate comparators. Cornish has failed to establish the second and fifth elements of his *prima facie* case related to Child Protective Specialist postings #C-03-02-386 and #C-03-02-387.

### ii.    Positions Requiring Previous Experience

TDPRS next argues that Cornish has failed to establish a *prima facie* case of discrimination regarding 10 additional positions he applied for because he did not meet the minimum qualifications for those positions. These positions included supervisor's positions, a director's position, a Case Analyst II-IV position, and two Child Program Specialist III positions. Cornish has set forth no competent summary judgment evidence showing that he met the minimum qualifications for these jobs. Thus, the court finds that Cornish has failed to establish a *prima facie* case of discrimination with respect to these positions, because he has presented no evidence to support the third element – that he was qualified for the positions at the time of his applications.

10

### iii.   Other Positions Applied For

Finally, TDPRS states that Cornish has not established a *prima facie* case of discrimination regarding any of the other positions he applied for, because he cannot show that after TDPRS did not hire him, it left the position open or filled it with a similarly-situated female.

First, with respect to the Adult Protective Specialist I-IV position, #C-03-02-430, TDPRS has shown that the position was rescinded before it was filled.  Cornish has presented no summary judgment proof raising a material issue of fact whether that position was in reality left open or awarded to a female applicant.  Therefore, the court finds that as to this job posting, Cornish has not met the fifth element of his *prima facie* case.

Finally, TDPRS argues that for all of the remaining positions he applied for, Cornish cannot show that after he was not hired, TDPRS left the position open or filled it with a similarly-situated female.  Here, Cornish may compare his situation to that of nearly identical, similarly situated individuals.  *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995).

Cornish compares himself to 14 female applicants who were hired by TDPRS. TDPRS has set forth competent summary judgment proof that seven of the comparators identified by Cornish applied to TDPRS between July 1992 and June 2001, before Cornish began applying to the agency in March 2002.  To establish his

11

*prima facie* case, Cornish must show that jobs he applied for were either filled by these female applicants or left open. *Davis,* 14 F.3d at 1087. All seven of these applicants (Robin Rattan, Tammy Porter, Amy Millender, Arlene Womack, Tammie Griffin, Diana Dupont, and Michelle Galyean) applied to TDPRS before Cornish did, and thus were not in the same applicant pool as Cornish. For this reason, they are not similarly situated comparators he can use to support his *prima facie* case of discrimination. Cornish has provided no summary judgment evidence raising a material fact issue whether any of the positions he actually applied for was filled by one of these seven female applicants. Therefore, evidence that these women were hired by TDPRS and Cornish was not will not satisfy the fifth element of Cornish's *prima facie* case, because they did not apply for the same jobs as Cornish.

Cornish has also identified Keila Dixon as a similarly situated female who was hired instead of him. Dixon's job application shows that she applied for job posting #C-03-01-867. Cornish has not alleged that he applied for this job, and thus cannot be considered similarly situated to Dixon for purposes of his *prima facie* case. Cornish cannot rely on the hiring of Dixon to show that she received a position he had applied for, and cannot establish a *prima facie* case of discrimination based upon Dixon's hiring.

Finally, with regard to the remaining comparators identified by Cornish, TDPRS argues that they are not similarly situated to Cornish because they met one or more criteria used by TDPRS for a hiring preference, or they were hired by TDPRS as part of a student program. Cornish, Sarita Ghulan, Kelly Plimpton, and Sarah Calloway

all applied for job posting #C-03-01-866.  TDPRS has presented summary judgment proof showing that Ghulan and Plimpton both had degrees in social work, thus qualifying them for a hiring preference.  TDPRS has further shown that Calloway was hired due to her position as a stipend student.  Cornish has presented no evidence disputing these facts.  Thus, it is undisputed that Cornish did not qualify for a hiring preference under the guidelines actually used by TDPRS, and was not a stipend student.  Therefore, Cornish has not shown that he was similarly situated to Ghulan, Plimpton or Calloway, and cannot establish a *prima facie* case based upon their hiring by TDPRS.

### iv.      Statistical Evidence

A plaintiff may use statistics to establish a *prima facie* case of disparate treatment if a gross disparity in treatment based upon the plaintiff's protected characteristic is shown.  *Anderson v. Douglas & Lomason Co., Inc.,* 26 F.3d 1277, 1285 (5th Cir. 1994), *cert. denied,* 513 U.S. 1149 (1995); *Trevino v. Holly Sugar Corp.,* 811 F.2d 896, 902 (5th Cir. 1987).  However, the court must be able to reasonably infer from the statistics better *actual treatment* of similarly situated females in circumstances "nearly identical" to Cornish's.  *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 345 (5th Cir. 2005).  Such a showing can be rebutted by the employer by discrediting the plaintiff's evidence or providing a non-discriminatory explanation for the apparently discriminatory result.  *Anderson,* 26 F.3d at 1285.

It is undisputed that the majority of TDPRS's workforce is female.  Cornish

13

alleges that this statistic supports his allegation that TDPRS discriminated against him due to his male gender.  On summary judgment, TDPRS presents evidence that it receives significantly more applications for employment from women than from men, and states that this disparity in applications accounts for the predomination of women in its workforce.  Cornish has failed to demonstrate that the court may reasonably infer from this statistical disparity that he actually received worse treatment from TDPRS as compared to similarly situated female applicants in nearly identical circumstances. *Keelan,* 407 F.3d at 345.  Therefore, the court determines that Cornish has failed to establish the requisite *prima facie* case of disparate treatment based upon these statistical facts.

### b. TDPRS's Legitimate, Non-Discriminatory Reason

Although Cornish has failed to set forth sufficient summary judgment evidence to establish a *prima facie* case of discrimination, the court finds that even if he had done so, TDPRS has articulated a legitimate, non-discriminatory reason for its failure to hire him.  *McDonnell Douglas,* 411 U.S. 793; *Davis,* 14 F.3d 1087-88.  TDPRS provides evidence on summary judgment showing that Cornish had an interview score of 6.5, and did not meet any of the criteria for a hiring preference.  TDPRS's summary judgment proof shows that Mackie rarely hired candidates with a score of 6.5 unless they had a degree in social work, formal social services experience, prior experience with TDPRS, or spoke Spanish.  Cornish did not meet any of these criteria.  The court

14

finds that TDPRS has sufficiently carried its burden of articulating a legitimate, non-discriminatory reason for its decision not to hire Cornish.

### c. Pretext

Finally, because TDPRS has carried its burden of production and successfully articulated a legitimate, non-discriminatory reason for not hiring Cornish, the burden of proof shifts back to Cornish to raise a genuine issue of material fact whether TDPRS's proffered explanation is pretextual. *Davis,* 14 F.3d at 1088. With respect to his interview score, Cornish offers nothing more than speculation that Mackie somehow rigged the interview to be able to give Cornish a score that just barely failed to qualify him for a hiring recommendation. Cornish has offered no summary judgment proof raising a genuine issue of material fact whether Mackie rarely recommended candidates with a score of 6.5 (Cornish's score) for hire, unless they qualified for a hiring preference. To raise a genuine issue of material fact regarding pretext, Cornish must show that TDPRS treated him less favorably than female applicants in "nearly identical" circumstances. *Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005), *cert. denied,* 126 S. Ct. 1027 (2006); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001).

Instead, Cornish argues that subjectively, Mackie should have considered him more qualified than the other candidates who applied for the same jobs (based upon a ranking system created by Cornish, rather than the criteria that were actually applied) and given him a hiring preference for formal social work experience when in

fact he had none.  Cornish has failed to show that under the criteria actually employed by Mackie, he, as a male, was treated worse than female applicants under "nearly identical" circumstances, and thus cannot raise a fact issue regarding pretext.  *Bryant,* 413 F.3d at 478; *Okoye,* 245 F.3d at 514.

Moreover, it is well established that employment discrimination laws are not intended to be a vehicle for transforming the courts into personnel managers who second-guess the business decisions of employers.  *Bryant,* 413 F.3d at 478; *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507-08 (5th Cir. 1988).  Management does not have to make proper decisions, only non-discriminatory ones.  *Bryant,* 413 F.3d at 478, *citing Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991).

Here, even if the court were to assume (which it does not) that Mackie's decision not to hire Cornish was unwise from a business standpoint, and that Cornish was passed over in favor of less qualified individuals, Cornish has pointed to no evidence suggesting that Mackie's decision was motivated by discriminatory animus. Therefore, Cornish has failed to carry his summary judgment burden on the issue of pretext.  In the end, Cornish's allegations amount to no more than his subjective belief that TDPRS engaged in discrimination.  Such a subjective belief, however genuine, will not permit Cornish to avoid summary judgment.  *Lawrence v. University of Texas Medical Branch at Galveston,* 163 F.3d 309, 313 (5th Cir. 1999). For all of the above reasons, Cornish's disparate treatment claim of gender discrimination must be dismissed.

### 2.    Gender Discrimination - Disparate Impact

16

Cornish also brings his claims of gender discrimination based upon a disparate impact theory.  The disparate impact model applies to discrimination claims regarding employment practices that are facially neutral in their treatment of different groups, but in fact impact one group more harshly than another, and cannot be justified by business necessity.  *Anderson,* 26 F.3d at 1284.  Although subjective or discretionary employment practices may be challenged on a disparate impact theory, the use of such subjective or discretionary decision-making does not itself create an inference of discriminatory conduct.  *Id., citing Watson v. Fort Worth Bank* & *Trust,* 487 U.S. 977, 990, 999 (1988).

To establish a disparate impact claim, a plaintiff must identify as part of his *prima facie* case a facially neutral policy or practice used by the employer that disproportionately impacts one group over others.  *Frank v. Xerox Corp.,* 347 F.3d 130, 135 (5th Cir. 2003); *Anderson,* 26 F.3d at 1284.  TDRPRS argues on summary judgment that Cornish has failed to identify a policy or practice it uses that causes a disparate impact upon male applicants.  The court agrees.  Cornish's response on this issue merely cites to statistics showing that TDPRS's workforce is overwhelmingly female.  He has  presented no evidence showing that any otherwise neutral TDPRS hiring policy *causes* this gender imbalance, as required by applicable law.  *See Anderson,* 26 F.3d at 1284, *citing Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657-58 (1989) (imbalanced workforce, standing alone, did not justify analysis of case under disparate impact model where plaintiffs did not identify a specific policy which caused the

17

imbalance or demonstrate how that policy or practice resulted in the disparity).

Cornish's case can fairly be described as a wide-ranging attack on TDPRS's hiring practices. The disparate impact model is not the appropriate vehicle for such an attack. *Anderson,* 26 F.3d at 1284; *Pouncy v. Prudential Ins. Co.,* 668 F.2d 795, 800 (5th Cir. 1982). Thus, TDPRS is entitled to summary judgment on Cornish's disparate impact claim of gender discrimination.

### 3.      Retaliation Claim

Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination. 42 U.S.C. § 2000e-3(a); *Perez v. Region 20 Education Svc. Ctr.,* 307 F.3d 318, 325 (5th Cir. 2002). Cornish alleges that TDPRS retaliated against him because it did not hire him due to his charge of discrimination arising out of his termination from the DPD. TDPRS moves for summary judgment on this claim.

To establish a *prima facie* case of retaliation, Cornish must show that 1) he engaged in an activity protected by Title VII; 2) he was subjected to an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse employment action. *Perez,* 307 F.3d at 325; *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004). The first two elements of Cornish's *prima facie* case are undisputed - that he engaged in protected activity and was subjected to an adverse employment action. TDPRS argues that Cornish cannot make a *prima facie* showing of a causal link between his protected activity and TDPRS's decision not to

18

hire him.  However, it is also undisputed that Mackie knew about Cornish's EEOC charge against the DPD at the time of Cornish's interview and before his hiring decision.  This evidence is sufficient to establish, for *prima facie* purposes, the third requirement of a causal link between Cornish's protected activity and the adverse employment action.  *See Medina v. Ramsey Steel Co.,* 238 F.3d 674, 684 (5th Cir. 2001) (employee met "causal link" element of *prima facie* case of retaliation by demonstrating that employer knew of his protected activity when adverse employment action was taken); *Carballo v. Log Cabin Smokehouse,* 399 F. Supp.2d 715, 724 (M.D. La. 2005) (same).

Because Cornish has established a *prima facie* case of retaliation, the burden shifts to TDPRS to present proof of a legitimate, nonretaliatory purpose for its decision not to hire Cornish.  *Davis,* 383 F.3d at 319.  To do so, TDPRS cites to its evidence that Cornish's interview score was below the average score of candidates recommended for hire, and that he did not qualify for a hiring preference under TDPRS's applicable criteria.  The court thus finds that TDPRS has successfully carried its burden of setting forth evidence of a legitimate non-retaliatory reason for its decision.  The burden now shifts back to Cornish to show that TDPRS's proffered reasons for its failure to hire him are actually a pretext for retaliation.  *Medina,* 238 F.3d at 685; *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998).

To meet this burden, Cornish must demonstrate that he would have been hired "but for" engaging in protected activity.  *Medina,* 238 F.3d at 685; *Sherrod,* 132 F.3d

at 1123.  While this portion of the analysis may seem identical to the "causal link" step of the *prima facie* case, the burden here is more stringent.  *Medina,* 238 F.3d at 685; *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116-1117 (5th Cir. 1983).  To withstand summary judgment, Cornish must reveal "a conflict in the substantial evidence on the ultimate issue of retaliation."  *Sherrod,* 132 F.3d at 1122.

To show retaliatory purpose Cornish relies solely on an e-mail from Adamo to other TDPRS officials regarding the discrimination complaint that Cornish filed with TDPRS.  Adamo's e-mail summarizes Cornish's allegations and states that it should be dismissed as untimely.  Nothing in the e-mail refers directly  to the reasons for TDPRS's  decision not to hire Cornish, and it cannot be inferred from the e-mail that "but for" his protected activity, Cornish would have had a job with TDPRS.  Although it is undisputed that Mackie, the decision-maker, was aware of Cornish's protected activity when he did not recommend him for hire, the e-mail from Adamo does not appear to have been sent to Mackie, and does not reference Mackie or his decision not to recommend Cornish for hire.  The court cannot infer retaliatory intent from Adamo's e-mail, and does not find that this proof meets the "stringent" standard of "but for" causation here.  Accordingly, the court will enter summary judgment for TDPRS on Cornish's retaliation claim.

IV.    **Defendants' Opposed Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment; Plaintiff's Motion for Leave to File Response to Defendants' Motion for Summary**

20

**Judgment Out of Time**

TDPRS moves to strike Cornish's response to its summary judgment motion because the response was filed six days late. In response, Cornish has moved for leave of court to file his response out of time. The court finds that it reaches the same conclusion regarding TDPRS's summary judgment motion whether or not Cornish's response is considered. Therefore, Plaintiff's Motion for Leave to File Response to Defendants' Motion for Summary Judgment Out of time is **granted**, and Defendants' Opposed Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment is **denied as moot.**

## V.     Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is **granted**, and Plaintiff Cornish's claims are hereby **dismissed with prejudice.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed March  29th    , 2006.

 s/Ed Kinkeade
ED KINKEADE
UNITED STATES DISTRICT JUDGE